## Lewis's Appeal.   Skiles's Estate.

1. Equality is equity, and where distribution is to be made among two or more, without anything to indicate the proportions in which they are to take, the presumption is that the shares are to be equal.

2. A testator devised "all the balance of my property to my sister for her lifetime, and at her death it is my desire that a part of it go to S. and his heirs."   The court below held that the bequest of a *part* was void for uncertainty; that as to the residue, subject to the life-estate of the sister, the testator died intestate; that immediately upon his decease the same vested in her as his next of kin, under the intestate law, and consequently she took the entire residue absolutely, instead of a life-estate therein.   *Held,* that this was error; that the testator was presumed to know that his sister was entitled to his property under the intestate law, and that his purpose was to designate some one to share said residue with her, and that in the absence of any indication of the proportions which they were to take, the shares must be equal.

March 25th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Chester county:* Of January Term 1878, No. 228.

Appeal of Joseph J. Lewis, administrator of Hopkins Skiles, deceased, from the decree of the court in the distribution of the estate of William Skiles, deceased.

An auditor was appointed to settle the account of said administrator, before whom it appeared that William Skiles died leaving a will, dated April 13th 1859, wherein, after giving sundry pecuniary legacies, and directing his executors to sell sufficient real and personal estate to pay debts and legacies, he disposed of the residue of his estate as follows:—

[*Lewis's Appeal.*]

"Also, all the balance of my property, personal and real, I give and bequeath to my sister, Susanna Skiles, her lifetime, and at her death it is my desire that a part of it go to Hopkins Skiles and his heirs."

After the death of William Skiles, his executor proceeded to settle his estate, and filed two accounts—one April 13th 1860, and another January 7th 1861. On the 1st day of April 1861, pursuant to the power conferred by the will, he sold a tract of 89 acres and 88 perches of land to Susanna Skiles, only sister of the testator. The purchase-money, beyond what was needed for the payment of debts and legacies, amounted to $5779.66. She gave to the executor a mortgage for the payment of the principal of that sum, without interest during her life.

Susanna Skiles held the land so purchased till May 22d 1876, when she died, leaving a will, by which she disposed of her estate to others than the legatees of her brother. She appointed William J. Burnside her executor, to whom letters testamentary issued.

The executor of William Skiles having collected a part of the mortgage given to secure the purchase-money, filed a supplementary account, charging himself with the sum received, and showing a balance for distribution of $2830.10. The account was confirmed *nisi*, September 10th 1877, and an auditor was appointed to make distribution.

The nearest of kin of William Skiles, at the time of his death, were Susanna Skiles, an only sister, and several first cousins—fourteen in number—among whom was Hopkins Skiles, who died in the lifetime of Susanna, in Maryland, leaving a widow and children. The fund before the auditor was claimed by his administrator in this state and by the executor of Susanna Skiles.

The auditor, inter alia, reported "One view of this clause of the will as presented to the auditor is that the division or parting is to be made between 'Hopkins Skiles and his heirs,' and Susanna Skiles; in other words that the clause should be made to read 'a part of it to go to Hopkins Skiles and his heirs,' and a part (or the other part) to Susanna Skiles. This view, in the opinion of your auditor, is equally erroneous and untenable; for it is clear, from the language of the will, that the testator intended giving his sister Susanna Skiles a life-estate and nothing more, for he not only uses the words 'her lifetime,' but adds 'and at her death it is my desire,' &c. He does not intend or attempt to dispose of the residue until after her death; so that it would be utterly impossible for her to take with 'Hopkins Skiles and his heirs' under the will. It being therefore beyond controversy that Susanna Skiles can take only a life-estate under the will, any other interest she may derive in her brother's estate must come through the medium of the intestate laws. But if she take under the intestate laws, she takes not under but outside of the will, whilst 'Hopkins Skiles and his heirs'

[Lewis's Appeal.]

take under the will or not at all, and as it is evident the testator intended to dispose of the whole of his estate by his will, we cannot presume that he intended Hopkins Skiles `and his heirs to take a part of the residue under the will, and his sister Susanna the other part under the intestate laws. If Susanna Skiles takes anything more than a life-estate it must be under the intestate laws, whilst if 'Hopkins Skiles and his heirs' take anything at all it must be under the will of William Skiles.

"But there is another and conclusive answer to both the views just discussed, viz.: That they require the supplying of words to carry them into effect, and to that extent the making of a will for, and not the interpreting the will of the testator, which the law will not permit.   *   *   * Your auditor is, therefore, of the opinion that as to the residue of his estate, the testator died intestate, and that as the fee-simple could not be in abeyance, but vested immediately upon his death and in his next of kin, Susanna Skiles, that consequently she took instead of a life-estate, the fee-simple, and that the funds now for distribution, being a portion of that estate, must be paid over to William J. Burnside, her executor, to be disposed of according to the provisions of her will."

The administrator of Hopkins Skiles filed exceptions, which the court overruled and confirmed the report, when this appeal was taken and this action assigned for error.

*P. Frazer Smith* and *Joseph J. Lewis*, for appellant.—It is to be presumed that a testator intended by his will to dispose of his whole estate, and courts will give this meaning to it if it can be fairly gathered from its language. Beyond question the testator intended Hopkins Skiles to be one of his legatees. The gift is absolute and the donee of this gift is certain. We contend, also, that the subject of the gift was well defined. It was a share of the "balance" of the estate which Susanna was to enjoy for life. That balance is now made certain by the settlement of the estate and it is this sum, thus ascertained, which is to be parted and one part allotted to Hopkins. Where something is to be divided into two parts, the presumption is that it is to be divided into two equal parts. Where a fund is to be divided courts will make an equal division: Doyle *v.* Attorney, 4 Vin. Abr. A. C. 486 ; Salisbury *v.* Denton, 3 K. & J. 529.

*D. Smith Talbot* and *William B. Waddell*, for appellee.—In ascertaining who the distributees are, and into how many shares a balance is to be divided, we must be governed exclusively by what is contained in the will. It nowhere gives Susanna Skiles a part of this balance. It is not claimed for her by reason of the provisions of the will. If she is entitled to the balance at all, it is because the will has made no disposition of it. He rights exist by

[Lewis's Appeal.]

reason of the intestate laws, and the number of parts into which the balance is to be divided, is not indicated by the will. The testator does not give a part to Hopkins Skiles and a part to Susanna Skiles, or use any language from which such an intent can be inferred. The appellant, in effect, supplies these words, because the intestate laws points her out as entitled to the estate.

It is not even claimed by the appellant, that the testator intended to give Susanna one-half of the balance of his estate. It is rather intimated that the testator did not intend to give her absolutely any of it. How then can it can claimed that he intended to give one-half to Hopkins Skiles, since his portion is dependent upon the intention of the testator, as regards the other half?

The claim of the appellant rests upon mere conjecture. This is not sufficient. The intention must be manifest, and rest upon something more certain than conjecture : Bradford *v.* Bradford, 6 Whart. 244 ; Duffield *v.* Morris, 8 W. & S. 348 ; Nyce's Estate, 5 Id. 259. We contend that the will is void for uncertainty and that Susanna has an interest under the intestate law and not under the terms of the will.

Mr. Justice STERRETT delivered the opinion of the court, May 5th 1879.

The fund for distribution in this case represents real estate, and the question is, what interest, if any, did Hopkins Skiles take under the residuary clause of his cousin's will? The testator, after giving sundry pecuniary legacies, and directing his executors to sell sufficient real and personal estate to pay debts and legacies, disposed of the residue of his estate in the following words : " Also, all the balance of my property, personal and real, I give and bequeath to my sister, Susanna Skiles, her lifetime, and at her death it is my desire that a part of it go to Hopkins Skiles and his heirs." The learned judge of the Orphans' Court held that the bequest of *a part* was void for uncertainty ; that as to the residue of his estate, subject to the life-estate given to his sister, the testator died intestate ; that immediately upon his decease, the same vested in her as his next of kin under the intestate law, and consequently she took the entire residue absolutely, instead of a life-estate therein. This, of course, resulted in a decree in favor of the executor of Susanna Skiles, from which the administrator of Hopkins Skiles took this appeal.

If the bequest was void for uncertainty, it is conceded the decree is correct. On the part of the appellant, however, the contention is that the bequest was valid, and that his intestate took, under the will, at least one-half of the residuary estate.

The first paragraph of the will contains the usual declaration of intention by the testator to dispose of his entire estate ; but it is manifest from the residuary clause that he did not fully carry out

his original purpose. In the first part of this clause, he gave, in express terms, a life-estate to his sister; and if he had stopped there, it is very clear that the entire remainder, at the termination of the life-estate, would have been undisposed of and would have passed, as in case of intestacy, to his next of kin. It appears, however, that this was not his will, for in the same breath he expresses a desire that a part of the remainder should then go to his cousin, Hopkins Skiles, but he made no disposition of the other part. It must be presumed that the testator knew what the effect of this partial disposition of the remainder would be, viz., that the undisposed of part or portion would pass, under the intestate law, to his sister, as his next of kin. We have, then, the clearly-expressed intention of the testator to give the residue of his estate to his sister for life, and, at her death, a part or portion thereof to his cousin, leaving the remaining part undisposed of, so that upon his decease it would vest absolutely in her. If, then, after carving out the life-estate, the testator declared that a part of the remainder should go to his cousin, and knew that the law would give the undisposed of part to his sister, in what proportions did they take, the one under the will and the other under the intestate law? Under the circumstances, it is manifest that not more than the two could participate, and hence the remainder was to be parted or divided between them; and in the absence of anything to indicate an unequal division, the presumption is that equality was intended; that the testator used the word *part* as synonymous with *moiety*, a sense in which it is sometimes popularly employed in speaking of a division between two. If he had said that one part should go to his cousin and the other to his sister, it would certainly be construed to mean an equal distribution between the two. What difference can it make that he expressly gave a part to Hopkins, and so drafted his will that by his silence as to the other part it would go to his sister? He is presumed to have known that this would be the effect, and to have had the result in contemplation when he published his will.

Giving effect, then, to the will, so far as it speaks, and appealing to the intestate law as to that wherein the will is silent, we reach the conclusion, that Hopkins took one part under the will, and the sister the other part under the intestate law. In other words, the remainder, subject to the life-estate, vested in the two, each taking a separate portion or interest, and presumptively an equal share. Equality is equity, and where distribution is to be made among two or more, without anything to indicate the proportions in which they are to take, the presumption is that the shares are to be equal.

Salisbury *v.* Denton, 3 Kay & J. 529, bears some resemblance to the present case. There the testator bequeathed property to be at the disposal of his wife, to apply *a part* to such charitable endowment, for the benefit of the poor of Offley as she might prefer, and

[Lewis's Appeal.]

the remainder to be at her disposal among his relations, in such proportions as she might direct.    Here two classes were contemplated, and it was held that the property so bequeathed was divisible in two equal parts, one of such parts for charitable purposes, and the other for the child of the testator absolutely.

It appears to us that the construction of the will above indicated is not unnatural or unreasonable.    It gives full force and effect to every word it contains, and at the same time contravenes none of its provisions.    If we were to hold that the bequest of *a part* of the remainder to Hopkins Skiles was void for uncertainty, it would defeat the clearly-expressed intention of the testator to make him one of the objects of his bounty, and at the same time result in giving testator's sister more than he intended she should have. Both of these results should be avoided, if it can be accomplished without doing violence to the language employed by the testator.

> Decree reversed and set aside at the costs of the appellee, to be paid by him out of the fund in his hands as executor of Susanna Skiles; and it is now adjudged and decreed that the net amount for distribution, viz., $2610.90, be equally divided, and one-half thereof paid to Joseph J. Lewis, administrator of Hopkins Skiles, and the other half to William J. Burnside, executor of Susanna Skiles, deceased.

Mr. Justice TRUNKEY dissented.