## Weissman *v.* Weissman, Appellant.

Argued January 10, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Robert H. Arronson*, with him *Herbert H. Hadra* and *Maurice Freedman*, for appellant.

*Nochem S. Winnet*, with him *Wesley H. Caldwell* and *Fox, Rothschild, O'Brien & Frankel*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 13, 1956:

This case has to do with an intra-family quarrel which contributes nothing to the dignity of home ties and as such would make depressing reading if all the details of the consanguineous controversy were to be related. This Court, however, is concerned only with the legal aspects of the dispute and shall refer to the litigants by name without designation of kinship.

On November 2, 1936, Abraham Weissman, president of the A. Weissman Building and Loan Association, assigned to Meyer Weissman, the plaintiff here, all his rights, title and interest in his shares of stock in the Association, making Meyer Weissman the sole shareholder of the Association. On that same day, Meyer Weissman surrendered all his shares of stock to

the Association; and the Association, by resolution of the Board of Directors, transferred to Meyer Weissman all assets of the Association, including the premises located at 928½, 930, and 930½ Alder Street, Philadelphia. The appeal before us has to do with these Alder Street properties.

Meyer Weissman, for reasons of his own, requested the Association to make out the deed to him in blank. This was done, and the deed, unrecorded, was kept with other personal records in the office of A. Weissman, Inc., at 607 West Girard Street, Philadelphia, where Meyer Weissman was employed. Twelve years later, in November, 1948, open war broke out between Meyer Weissman and Rose Weissman, custodian of the office which held Meyer Weissman's deed, and Meyer Weissman was driven from the office. Prior to this time, the rents and issues from the properties were collected by Meyer Weissman, but after the schism between these two, Rose Weissman took charge of the revenues.*

Six years later, on September 17, 1954, the deed to the Alder Street properties turned up in the office of the Commissioner of Deeds of Philadelphia County, bearing the name of *Bertha* Weissman as grantee. Upon learning of this state of affairs, Meyer Weissman filed a Bill in Equity charging that Bertha Weissman, with the connivance of Rose Weissman and others, had fraudulently inserted her name into the deed as grantee. He accordingly prayed that Bertha Weissman at once be declared constructive trustee of the property and that she be compelled to grant and convey the premises back to him in fee simple.

Bertha Weissman denied the charges of fraud and challenged that equity had jurisdiction, asserting that

---

* The contest over the rents and issues is in itself the subject of litigation—*Craven v. Weissman*, C.P. No. 4, December Term, 1951, No. 5061—and awaits the decision in this case.

the issue between the plaintiff and defendant was one which could only be tested on the law side of the Court. When the case finally went to hearing before a chancellor, Bertha Weissman testified that she had obtained the properties from A. Weissman in consideration of $750 which she had expended for repairs and improvements to the family household. The chancellor found difficulty in accepting this testimony as trustworthy.

Although the deed was duly recorded in the office of the Commissioner of Deeds, the defendant failed to produce it at the hearing, explaining that it had been "lost." The photostatic copy in the Commissioner's office disclosed that the original document had unquestionably been tampered with. The insertion of the name Bertha Weissman appeared in typewriting different from that which marked the other typing in the instrument. The pronoun "her", which occurred several times in the deed, gave evidence of having been typed over the erasure of the pronoun "his." The chancellor concluded that the "loss" of the original deed by the defendant or by someone in her behalf was a convenient way of preventing a close study of the document itself, a scrutinization which would expose more vividly and conclusively than the photostatic copy, the mutilations and fraudulent insertions performed by the defendant with the connivance of Rose Weissman and others.

A reading of the record confirms that the Chancellor was justified in concluding: "The tale of the loss of the original deed is not accepted by this Court and we regard the failure to produce the deed as an affirmative effort to prevent scrutiny of the deed and to conceal evidence of its alteration. For eighteen years the deed allegedly remained safe and unrecorded in defendant's possession; in 1954 it was recorded and it is now alleged to have been lost when litigation requires

its production in 1955. We have been unable to credit this explanation."

The findings of the chancellor, affirmed by the court en banc, that the "defendant or someone acting in her behalf improperly, illegally and fraudulently caused her name to be inserted as grantee in the said deed from the A. Weissman Building and Loan Association," are amply supported by competent and credible evidence, and we see no reason to interfere with them.[*]

The facts found by the chancellor form a proper basis for the Court's decree that the defendant is constructive trustee of the property in controversy.

Counsel for the defendant-appellant argues in his brief that: "The whole controversy in the case at bar turned on the question whether plaintiff-appellee or defendant-appellant was and is the legal owner of the properties in question," and that, therefore, if "the legal title is the only or important question to be decided, not an action in equity, but an action at law in ejectment is the proper remedy." In this argument the appellant overlooks the intent and scope of equity jurisdiction. In *Custis v. Serrill*, 303 Pa. 267, 272, this Court affirmed the rule which has always characterized equity, namely, "Whether or not the remedy in equity is more efficacious, adequate, or convenient than an action of law, it is certain chancery always assumes jurisdiction in relief of fraud."

The plaintiff in the case at bar founds his whole case on the assertion of fraud practiced by the defendant. Equity has ways of seeking out fraud and of affording the appropriate remedial relief which are often beyond the potentialities of actions at law. "Equity courts are not bound by strict common law rules. They possess broad powers and should exercise them so as

---

[*] *Byers v. Byers*, 208 Pa. 23.

to do substantial justice. Equity looks beneath the rigid rules of the law to seek substantial justice. It has power to prevent such rules from working an injustice, and will depart therefrom whenever it is necessary to accomplish the ends of justice." Volume 30, Corpus Juris Secundum, Equity, sec. 89, p. 456.

To borrow an illustration from the world of aviation, equity is to law what the helicopter is to the conventional airplane. Equity can travel in any direction to achieve its objective of truth, and when it has found truth it can land on terrain which often would be utterly futile and unapproachable to formalistic law. And on that terrain of ascertained fact, equity surveys the whole situation and grants the relief which justice and good conscience dictate.

In the case of *Leahey v. Leahey,* 309 Pa. 347, 353, this Court supplied the answer to the contention presented by the appellant here, namely, "They (appellants) say the suit should have been brought at law; that the bill is a mere ejectment bill, no fraud being averred as to the execution of the deed. This position ignores the true situation. Plaintiffs' contention is that defendants fraudulently took possession of and recorded the deed which had never become effective by delivery. As the chancellor points out, this allegation of fraud brings the case within equity jurisdiction under section 39 of the Act of June 13, 1840, P. L. 666 (Act of February 14, 1857, P. L. 39, extending its provisions throughout the State)."

The appellant complains that the chancellor abused his discretion when he reopened the case at plaintiff's request to permit the testimony of the district supervisor for the Building and Loan Bureau of the Department of Banking. We find the appellant's observations in this respect to be without merit. Nor do we find any abuse of discretion in the chancellor's limiting the

scope of the testimony heard at the reopened hearing. Decree affirmed. Costs on appellant.