**Sebold v. Mallace**

*Alexander A. DiSanti,* for plaintiff.

*Arnold E. Rubin,* for defendants.

REED, JR., J., March 9, 1973.—Plaintiff, Mary A. Sebold, a 72-year-old, semi-invalid, brings this suit in

equity seeking on one count a reconveyance of real estate known as 16 West Lynbrook Road, Collingdale, Delaware County, Pa., from defendants, who are her daughter and son-in-law, back to herself as one-half owner and them as one-half owner, jointly; and on a second count, an accounting and return from her daughter, Virginia Mallace, of moneys withdrawn from a joint savings account, which moneys are alleged to have been the sole property of plaintiff.

Defendant has filed preliminary objections to plaintiff's complaint seeking dismissal of the suit on these grounds: (1) Plaintiff has an adequate remedy at law by action for reformation of the deed; (2) plaintiff's suit is barred by the five-year statute of limitations on resulting trusts, Act of April 22, 1856, P.L. 532, sec. 6, 12 PS §83; (3) plaintiff is guilty of laches in bringing this suit; and (4) plaintiff is barred by the statute of frauds, Act of April 22, 1856, P. L. 532, sec. 4, 33 PS §2.

We do not find defendants' objections to be well found.

Plaintiff by her complaint alleges that on January 23, 1965, her husband died, and defendants thereupon took up residence with her at her home on Malcolm Street in Philadelphia. Thereafter, at defendants' suggestion, she sold this property and delivered the proceeds in excess of $7,000 to defendants. Defendants were to use the sum as a down payment for the purchase of the subject Collingdale property, with the understanding that title would be taken jointly in the names of the three parties: plaintiff to have a one-half interest, and defendants a half interest by the entireties. Plaintiff also had the right to reside therein for life.

Plaintiff also alleges that because of her semi-invalid physical condition she named her daughter, Virginia

Mallace, as joint owner with her of a certain savings account for the purpose of convenience.

Plaintiff goes on to allege that on October 26, 1972, defendants evicted her, and she then discovered for the first time that she was not on the deed as a record owner of the property. She also then discovered that on October 2, 1972, her daughter had covertly removed in excess of $5,500 from the joint savings account. She alleges that defendants have defrauded her of her property by their failures to keep the promises made to her and upon which she relied in turning over her property to their care.

I. Turning initially to the matter of jurisdiction. While it is true that a proper forum exists for plaintiff in either law or equity nevertheless, "[e]quitable jurisdiction does not depend on the want of a common law remedy, for whilst there may be such a remedy it may be inadequate to meet all the requirements of a given case . . .": Peoples-Pittsburgh Trust Co. v. Saupp, 320 Pa. 138, 146, 182 Atl. 376, 380 (1936). Reformation of the deed at law may be one remedy for plaintiff; however, plaintiff brings suit upon allegations of fraud, seeking declaration of a resulting trust as to one-half of the subject real estate.

"[T]he jurisdiction of equity in all cases of trust, express or implied, resulting or constructive, is unquestioned": 21 C.J. 116, §93. "Equity will take jurisdiction on the ground of fraud where, by willful or intentional acts, omissions, or concealments, one party takes an undue or unconscionable advantage over another": 30 C.J.S. 880, §50(b). This is precisely the basis of plaintiff's action. "Like trusts, the subject of fraud is pecularily a matter of equity jurisdiction": 30 C.J.S. 874, §48. See also Weissman v. Weissman, 384 Pa. 480, 121 A.2d 100 (1956). Equity has jurisdiction.

The authority defendant relies upon, Marshall v. Keystone Mutual Casualty Co., 56 Dauph. 343, 54 D. & C. 391 (1945), and Wilhide v. Keystone Insurance Co., 195 F. Supp. 659 (1961), are inapposite.

II. Defendants' separate objections of statute of limitations and laches are not actually separate, but must be considered together. The five-year statute of limitations on resulting trusts, the Act of April 22, 1856, P. L. 532, sec. 6, 12 PS §83, provides:

"No . . . action [shall] be maintained . . . to enforce, any implied or resulting trust as to realty, but within five years after such . . . trust accrued; . . . unless . . . there has been, in part, a substantial performance. . .: *Provided, That as to anyone affected with a trust, by reason of his fraud, the said limitation shall begin to run only from the discovery thereof,* or *when, by reasonable diligence, the party defrauded might have discovered the same. . ."* (Italics supplied.)

Statutes of limitations are not strictly applicable to actions in equity, which are governed by the doctrine of laches, but equity does adopt and apply such statutes by analogy: 8 Standard Pa. Pract. §78. Therefore, whether or not plaintiff is guilty of laches by analogy to the statute of limitations, depends upon a determination of the statutory date from which the statute might be considered to have started to run.

From the lis pendens filed of record in this case, it is noted that the deed conveyance of the subject property was made to defendants on September 11, 1967. Plaintiff was evicted on October 26, 1972. Promptly thereafter, on November 2, 1972, plaintiff filed her complaint.

Defendants maintain as a matter of law that the five-year period began to run on September 11, 1967, the date of conveyance to defendants. However, that

approach overlooks the fact that plaintiff had no reason to check the deed record on that date. She was relying upon defendants to keep their promise, which assured she would not exercise reasonable diligence and is the essence of alleged fraud. She alleges that she helped provide a home for defendants, and expected to remain with them the rest of her life. Under these alleged facts, there would be no reason for her to suspect she was not a party to the conveyance.

"The words of the Act of Assembly are not 'when the party defrauded might have discovered the same,' but when 'by reasonable diligence' he might have done so. These words are surely not to be rejected and the act construed as if they were not in it. There are very few facts which diligence cannot discover, but *there must be some reason to awaken inquiry and direct diligence* in the channel in which it would be successful. This is what is meant by reasonable diligence": Maul v. Rider, 59 Pa. 167 (1869). (Italics supplied.)

The mere fact that a deed is recorded does not operate to constitute constructive notice of fraud, where a confidential relationship exists: Madole v. Miller, 276 Pa. 131, 119 Atl. 829 (1923). "[A] confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest": Drob v. Jaffe, 351 Pa. 297, 41 A. 2d 407, 408 (1945).

This suit of a mother against a daughter and son-in-law, coupled with the allegations recited is sufficient to support a conclusion that a confidential relationship existed.

Furthermore, during the period defendants maintain the statute of limitations was running its five-year

course, plaintiff was in joint possession of the real estate with them. Her possession as alleged beneficiary of a resulting trust operates to toll the operation of the statute for so long as her possession continued: Zahorsky v. Leschinsky, 394 Pa. 368, 147 A.2d 362 (1959).

At this preliminary stage, and for these reasons, we cannot say the statute of limitations began to run prior to October 26, 1972, and, therefore, laches cannot be considered until that date.

III. Defendants' final objection is based upon the statute of frauds. The Act of April 22, 1856, P.L. 532, sec. 4, 33 PS §2, specifically declares its provisions are not applicable to a trust or confidence arising by implication or construction of law. Plaintiff's allegations bring her within this protective cover.

## ORDER

And now, March 9, 1973, defendants' preliminary objections are denied, and defendants are granted leave to file an answer to plaintiff's complaint within 20 days from this date.