**Tracy Trust**

Before Klein, A. J., Shoyer, Gutowicz, Pawelec and Silverstein, JJ.

*Joseph E. Lastowka, Jr., John V. Bonneau* and *H. Ober Hess,* for exceptants.

*Norman E. Donoghue, 2d,* and *George J. Hauptfuhrer, Jr.,* contra.

SHOYER, J., March 6, 1974.—

## OPINION SUR EXCEPTIONS
## TO ADJUDICATION

The recent death of one of two life tenants requires that this inter vivos trust fund now be split in two. Exceptions to the adjudication of Silverstein, J., the learned auditing judge, present us with two problems: (1) does settlor's granddaughter, Stephanie, who was adopted out of the family after settlor's incompetency, retain her right to inherit as "issue" of settlor's son, the deceased life tenant; and (2) should the principal remaining in trust bear the brunt of the $15,000 business advance to the deceased life tenant? We agree that the learned auditing judge was correct in answering "yes" to both questions.

Judge Silverstein's adjudication sustaining Stephanie's claim is so comprehensive and its reasoning

so logical that little of value can be added. The question is obviously one of *identity* and no Pennsylvania statute enacted in the settlor's lifetime even tends to defeat the claim of this grandchild. The parties have agreed that this 1944 insurance trust was funded, but funded* or unfunded, the legislature has mandated that it must be considered nontestamentary: Henderson Estate, 395 Pa. 215, 229 (1959), construing the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.1, et seq.

Stephanie's brother, Stephen, IV, the exceptant who is claiming her share, stresses the adoption formula of a statedrawn will, overlooking or ignoring the rule that it is always the expressed will of the settlor which, if not unlawful, must prevail. The same principles are followed in the construction of deeds as in the case of wills: Benson Estate, 447 Pa. 62, 68 (1971).

"The courts' task in ascertaining a settlor's intent has likewise often been reiterated: 'In order to ascertain the actual intent of the settlor or testator, the Court must place itself in his armchair and consider not only the language and scheme of the instrument but also the facts and circumstances with which he was surrounded; and these surrounding facts and circumstances include the condition of his family, the natural objects of his bounty and the amount and

---

* A "funded" life insurance trust is usually defined as one in which the settlor, along with the delivery of the policies, has conveyed securities with sufficient income-producing capacity to pay the premiums. The instant trust is a hybrid in that the settlor while conveying to his trustees ample stocks and bonds with which to pay all premiums, nevertheless retained sole responsibility for their payment.

character of his property . . .,' (citations omitted)." Id. pages 68-69.

When settlor used the word "issue" he was obviously referring to the one and only remainderman then in existence. His son, Stephen, was then divorced and remarried, and if settlor had intended to exclude his only living grandchild, he must necessarily have done it expressly and not by innuendo or by the possible contingency of a future adoption out of the family. " 'Issue' means issue of the body, offspring, progeny, natural children, physically born or begotten by the person named as parent": Howlett Estate, 366 Pa. 293, 297 (1951). There can be nothing "cryptic" about the word's meaning when *restricted to the blood line*. Had settlor included Stephanie by mentioning her name, no one would contend that a change of name by marriage, or adoption, would exclude her. We are convinced that her identity was just as firmly established by her inclusion as "issue."

In support of their contention that only the outgoing share of Stephen Tracy, Jr., should be charged with the $15,000 advance, counsel for the surviving life tenant argue that equity means equality and that despite the fact that the two life tenants, after payment of the $15,000 advance, continued to share income equally, the application of equitable principles demands that the principal remaining in trust be relieved of the burden of any part of this advance because it was only the deceased life tenant who had the benefit of it. Exceptant cites Lewis's Appeal, 89 Pa. 509, 513 (1879), where the doctrine "equality is equity" was followed. The citation is inapt because there testator's will merely requested that "a part" of his residue "go" to a first cousin after termination of the life estate given testator's sister. The court said:

"Giving effect, then, to the will, so far as it speaks, and appealing to the intestate law as to that wherein the will is silent, we reach the conclusion, that Hopkins took one part under the will, and the sister the other part under the intestate law. In other words, the remainder, subject to the life-estate, vested in the two, each taking a separate portion or interest, and presumptively an equal share. Equality is equity, and where distribution is to be made among two or more, *without anything to indicate the proportions in which they are to take,* the presumption is that the shares are to be equal." (Italics supplied.)

Here, there is no need to rely on the intestate law, nor to look to any other outside aid, because settlor has clearly stated the one and only kind of advance which should be charged to the recipient "in ultimate distribution against his or her share of the principal of this trust estate." Such an event would be "accident, illness or other emergency." Settlor's provision for the business advance was obviously unequal in that it was granted to his named son only and not to his daughter. The deed sets up four categories of advances, each in a separate paragraph as outlined in the adjudication. The fund was to remain *one* fund until death of the son or daughter, whichever occurred first, and income from principal was to be shared equally regardless of the amount of the advances or to whom paid. The deed was carefully drawn by a lawyer and it would be gross error for the court to insert "equality" where the express language taken as a whole points to settlor's contrary intent.

For the above reasons, as well as those so clearly stated by the learned auditing judge, the exceptions are dismissed and the adjudication is confirmed absolutely.