## Leckonby v. Leckonby

*Richard F. Stevens* and *Kelly D. Dunn,* for plaintiff.

*Alfred P. Antonelli* and *James R. Fiorentino,* for defendant.

YOUNG, *J.,* February 25, 1986 — After a hearing held on February 7, 1986, and argument on February 14, 1986, the court makes the following

## FINDINGS OF FACT

(1) In 1970 the parties to this equity action were divorced. Shortly before their divorce, they signed a separation agreement, the interpretation of which is now before us.

(2) Each party was then and is now, represented by counsel, and there is no issue of fraud, misrepresentation, or full disclosure, as is so often the case. Rather, there is an important question regarding the intent of the parties at the time the agreement was signed.

(3) The parties have each abided by the terms of the separation agreement for over 15 years, and neither party asks the court to change or modify it in any way.

(4) Paragraph 8 of the separation agreement provides that commencing on September 1, 1974, or until her remarriage or death, whichever shall first occur, plaintiff shall receive $500 per month.

(5) The wife remains alive and unmarried.

(6) The agreement further provides at paragraph 17 that after an initial period of 12 months, the wife's monthly income shall be adjusted upward or downward, by the percentage by which the husband's net employment take-home pay shall exceed

that pay as of July 1, 1971, but not more than $25 per month in any one year.

(7) These monthly support sums have been changed pursuant to the agreement from time to time, and immediately before this dispute the wife was being paid $850 per month.

(8) The husband was at all times relevant an employee of Lehigh University, where he attained the untenured position of Director of Athletics.

(9) At his request, and with the required permission of the president of the university, the husband worked beyond his normal retirement age of 70, and finally did cease his duties as of December 31, 1984.

(10) The husband investigated his various retirement options, which were several and complex, and decided for a variety of reasons to defer his pension for five years.

(11) This deferral was in his best interest, as it will result in a substantially higher pension benefit (approximately 40 percent to 50 percent). His health is good; he has access to other ample income for his needs; and he hopes to be able to make gifts to his children after his pension benefits begin.

(12) When the husband elected to defer the receipt of his pension, he knew that this would have an adverse effect upon the wife's immediate income.

(13) The husband ceased paying the wife any monthly amount of money on January 1, 1985, in view of his belief that he had no net employment/pension income.

(14) Both parties agree that, depending upon the number of years that they live, the wife may herself in fact receive more total dollars as a result of the husband's election to defer his pension benefits.

(15) The wife received certain assets under the separation agreement, and presently owns an apart-

ment building which, except for her individual heating bill, pays for her shelter.

(16) The wife does not, however, have any other resources, and is not now able to support herself "in keeping with her accustomed standard of living and her reasonable requirements."

(17) The wife is presently being helped financially by her family and friends, including loans and gifts.

(18) The wife did not consent or acquiesce in the husband's decision to defer his pension benefits.

(19) In 1970 neither party bargained for or foresaw the possibility that the husband would elect to defer his pension benefits.

(20) Unlike the other options available to the husband in choosing his method of receiving his pension benefits, the particular election he made to defer his pension may be changed at least annually upon several months notice.

## DISCUSSION

The court has been favored with fine briefs and argument in this matter. Both parties agree that the court's sole function is to determine their intent at the time of the signing of the agreement, and each further agrees that neither the husband nor wife anticipated the event which brings them into court. The husband argues "strict construction," while the wife pleads for "equity." It is this last point upon which we first focus.

This is not a case "at law." Plaintiff captioned her cause of action as one of equity. She is not merely seeking money damages under a contract, but is asking for equitable relief due to a mutual omission in an otherwise clear and unambiguous

agreement. Defendant husband did not object to the court's role as chancellor, and we conclude that our equity jurisdiction is appropriate.

Those who seek the aid of a court of equity submit to the jurisdiction of the court and subject themselves to the imposition of whatever terms the principles of equity require. *Hartman v. Cohn,* 350 Pa. 41, 38 A.2d 22 (1944). Equity looks beyond the rigid rules of the law in order to seek substantial justice, and departs from those rules whenever it is necessary to accomplish the ends of justice. It has been written that equity is to law what the helicopter is to the conventional airplane. "Equity can travel in any direction to achieve its objective of truth. When it has found the truth, equity can land upon terrain which would be utterly futile and unapproachable to formalistic law. On such terrain of ascertained fact, equity surveys the whole situation and grants the relief which justice and good conscience dictate." *Weissman v. Weissman,* 384 Pa. 480, 485, 121 A.2d 100, 103, (1956). Equity considers that as done which ought to be done. *Stark v. Lardin,* 133 Pa. Super. 96, 1 A.2d 784 (1938).

In view of the agreed fact that neither the husband nor the wife contemplated in 1970 that the husband would be in a position to elect to defer the substantial benefits of his pension, we find that this issue was not a part of the bargain, or consideration. The husband did not give up any benefit to obtain his right; he simply did not think of it. He testified to this in his own words. Similarly, the wife did not over 15 years ago foresee the possibility of being without sufficient income for a period of five years. If "equity" is fairness and equality, we must arrive at a solution which embodies those qualities.

We find that it was the intent of the parties that the wife of 19 years and the mother of his two then-

teenage children was to be supported at least to the extent of her "reasonable requirements." Food, clothing, residential heat, and the other miscellaneous necessities of daily living are encompassed within those requirements. Although the husband must not select the monthly pension benefit which is most helpful to his former wife, fairness will not permit him, absent her consent, to place her in an embarrasing financial condition when the husband is apparently able to provide for her basic requirements. This is particularly true where it is admitted that husband did not "bargain" for this advantage which came to light many years later.

And yet it would not be completely fair to the husband to require him to disadvantage his financial opportunities which may reasonably be expected to benefit himself, his children, and perhaps even the wife. We do not find that his selection of the deferred benefits was with malice. He may have derived some ancillary pleasure at the temporary financial prospects of his election as it related to his ex-wife, but we have found that other legitimate reasons for this decision were prevailing. Thus, we shall afford the husband some additional choices, and the possibility of the recapture of some of the monies we shall award to the wife.

In all cases, the appropriateness of a particular form of relief is to be tested by balancing the seriousness of the injury against the cost of avoiding it and the importance of the conduct causing it. *Dexter v. Bebenek*, 458 Pa. 1, 327 A.2d 38 (1974).

We have discussed fairness in terms of providing the wife with her bare requirements, and of allowing the husband some credit toward his unexpected support payments. With regard to "equality," we begin where the parties began in 1970. Neither of them thought about the possibility of what oc-

curred, and neither should benefit or be harmed by what was unanticipated and not a part of the bargain. Accordingly, we shall place the parties back at status quo. The husband will be ordered to pay the wife the $500 per month specified in paragraph 8(b). The husband does not have any net employment take-home pay or pension benefits, and we will therefore not apply paragraph 17. This monthly sum shall commence on the date the complaint was filed, which was when plaintiff took the steps necessary to protect her interests. The husband shall begin his payments 10 days after the service of this order upon his counsel. He shall pay the arrearages which have accumulated at the rate of at least $100 per month.

In addition, one half of the required payments shall be credited to the husband when he elects to begin to receive his monthly pension benefits, with said credits being deducted in amounts of not more than $250 per month.

It has long been acknowledged that equity begins with equality. Where distribution is to be made among two or more, without any evidence to indicate the proportions of such distribution, equity presumes the distributions are to be equal. *Lewis's Appeal,* 89 Pa. 509 (1879).

When the husband elects to receive his pension benefits, which he may decide to do at any time henceforth as permitted by TIAA and CREF, he shall pay the wife whatever amount is due under paragraph 17(b) of the agreement as it has been applied by the parties following prior litigation. However, it is the sense of this order that the wife shall not receive less per month than $500, and that any credits due to husband shall be taken over an extended period of time so that her monthly income will not drop below $500.

We recognize that we have not considered the detailed needs of the wife or the actual net income available to the husband. Our order will thus permit either party to place this matter on the court's next available hearing list for those purposes. It should be noted that the husband has it within his power to rather quickly obtain his pension benefits in the event that the payments specified in this temporary order are presently beyond his means, although we suggest that he carefully study the total impact of our decision on his retirement goals in view of the credit he will later receive. Similarly, we urge the wife to weigh the possible long-range advantages of obtaining an extra 40 percent to 50 percent monthly benefit in the later years of her life, should husband's present good health indicate his prospects for a long life.

## CONCLUSIONS OF LAW

(1) Defendant did not maliciously breach the separation agreement of 1970 when he voluntarily deferred his pension income in 1984 and consequently ceased payments to plaintiff.

(2) Justice and good conscience dictate that defendant continue to make support payments to plaintiff so that she may continue to live in keeping with her accustomed standard of living and her reasonable requirements.

(3) The principles of equity and the circumstances of the case at bar require that defendant make monthly support payments to plaintiff in an amount of $500 until such time as he chooses to receive pension income.

(4) The principles of equity and the circumstances of the case at bar require that defendant make monthly payments toward the arrearages ac-

crued since this suit was filed in an amount of at least $100.

(5) The principles of equity and the circumstances of the case at bar require that defendant receive credit for one-half of all payments he shall make to plaintiff pursuant to the attached temporary order, which credit shall apply to monthly support payments made after defendant shall begin to receive pension income, but that such credit shall be payable only in such amounts each month and over a period of time which will assure that plaintiff receives at least $500 each month.

## TEMPORARY ORDER

And now, this February 25, 1986, after hearing, argument, review of the entire record in the above matter, and for the reasons expressed in the attached opinion,

It is ordered that defendant pay plaintiff monthly support in an amount of $500 commencing the date this suit was filed, April 11, 1985, until such date as he shall begin to receive pension income. The first such monthly payment shall be made 10 days after service of this order and opinion upon counsel for defendant. Defendant shall also simultaneously make monthly payments to plaintiff towards the arrearages accumulated to date of at least $100.

It is further ordered that once defendant shall begin to receive pension income, his monthly support payments shall be calculated pursuant to paragraph 17 of the 1970 separation agreement. Defendant shall be given credit towards such support payments, once he begins to receive pension income, for one-half the payments he shall have made pursuant to this order provided, however, that such credits will be taken monthly only in amounts which shall not exceed $250 and which will guaran-

ty that plaintiff shall receive at least $500 each month.[1]

1. It is the sense of this order that it is only temporary in nature, and is fashioned to remedy the immediate nature of plaintiff's harm. Either party may place his matter on a hearing list to elicit further testimony as to the specific economic circumstances of the parties as such evidence may affect a modification of this order.