666 A.2d 341

Alfred W. SNYDER, Doris F. Moore, and
Rachael R. Heath, Appellants,

v.

David T. GRAVELL and Antoinette D'Adamo, Appellees.

Alfred W. SNYDER, Doris F. Moore, and
Rachael R. Heath, Appellees,

v.

David T. GRAVELL and Antoinette D'Adamo, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 13, 1995.

Filed Oct. 20, 1995.

Marshall E. Anders, Stroudsburg, for appellants.

Mark S. Love, Tannersville, for appellees.

Before KELLY, FORD ELLIOTT and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

In fall of 1992, appellee David T. Gravell won the Pennsylvania Wild Card Lotto jackpot, valued at $9,816,058.56. Shortly after Gravell went to the Pennsylvania Lottery Commission to claim his winnings, a group of three individuals filed a competing claim. This group, consisting of appellants Alfred W. Snyder, Doris F. Moore, and Rachael R. Heath, alleged that they were members of a lottery group along with Gravell and his girlfriend, appellee Antoinette D'Adamo. They further alleged that the winning ticket, worth over nine million dollars, was a group ticket, and therefore they were each entitled to twenty percent of the lottery winnings.

On September 28, 1992, appellants filed a suit in equity against appellees Gravel and D'Adamo. The essence of the complaint was that the lottery group constituted a joint venture, and that appellees had committed fraud, breached their fiduciary duties to their fellow joint venturers, and breached the unwritten joint venture agreement. Appellees filed a counterclaim seeking interest on the winnings that had been withheld, along with lost opportunity costs.

Sitting in equity, the Honorable James R. Marsh held a non-jury trial in December 1993. After accepting Proposed Findings of Fact and Conclusions of Law from both sides, Judge Marsh found that neither side had proven their claim.

Both parties filed exceptions, which Judge Marsh denied. These appeals followed.

■ Initially, we note that "[a]ppellate review of equitable matters is limited to a determination of whether the lower court committed an error of law or abused its discretion." *Marra v. Stocker*, 532 Pa. 187, 191–92, 615 A.2d 326, 328 (1992).

■ Appellants' first claim is that the chancellor erroneously applied a clear, precise, and convincing burden of proof to their breach of contract claims. Appellants correctly note that generally, "the party having the burden of proof in a contract matter must sustain it by a 'preponderance of the evidence.'" *E.g., Ragnar Benson, Inc. v. Bethel Mart Associates*, 308 Pa.Super. 405, 412, 454 A.2d 599, 602 (1982). In this case, however, appellants sought the imposition of a resulting trust as a remedy for appellees' alleged breach of contract. This Court has held that "[t]he party seeking to establish the existence of a resulting trust bears a heavy burden of proof; the evidence must be clear, direct, precise and convincing." *Chambersburg Trust Co. v. Eichelberger*, 403 Pa.Super. 199, 204, 588 A.2d 549, 551 (1991) (emphasis added). Given the remedy that appellants sought, the chancellor correctly applied a higher burden of proof to their claims.

■ Next, appellants argue that the chancellor made a number of factual findings that were not supported by the record. It is well settled that:

> A chancellor's findings of fact … have all the force and effect of a jury's verdict and will not be disturbed on appeal if there is sufficient evidence to sustain such findings. [citation omitted]. This rule is particularly applicable to findings which are predicated upon the credibility of witnesses, whom the chancellor has had the opportunity to hear and observe. [citation omitted].

*Moore v. Diaz*, 428 Pa.Super. 532, 539, 631 A.2d 658, 662 (1993) (quoting *Village Beer & Beverage, Inc. v. Vernon D. Cox & Co.*, 327 Pa.Super. 99, 102, 475 A.2d 117, 118 (1984)).

■ After careful review of all of the findings highlighted in appellants' brief, we find ample record support for each of the disputed findings. While in some instances the facts could also support an alternative inference, the chancellor chose to resolve these ambiguities in favor of appellees. Since these determinations were often dependent on the credibility of witnesses whom the chancellor heard and observed, we are not in any position to reverse these findings once we find record support. Therefore, appellants' second claim must fail.

■ Appellants also assert that the chancellor erred when he ruled that the policy behind the Statute of Frauds was applicable to this case. When appellees asserted the Statute of Frauds as a defense, the chancellor properly ruled that the statute was not applicable on these facts. He went on to state, however, that the policy of the statute should be applicable to this type of case, and that this therefore supported the application of a higher burden of proof.

■ Even if we assume that it was error to consider the policy behind the Statute of Frauds, the error would be entirely harmless because the statute's policy was only used to bolster the chancellor's decision to apply a higher burden of proof to appellants' claims. As we have already held that the chancellor correctly applied the higher burden of proof, the policy of the Statute of Frauds would have no impact on the decision in this case. Therefore, we need not consider this claim any further.[1]

In a final claim, appellants assert that the chancellor reached out to decide an issue that was not before him—whether the group's intended operating rules were logical—and then used the finding on that irrelevant matter in deciding against appellants. Contrary to appellants' assertion, we hold

1. While we need not actually determine whether the chancellor properly considered the policy behind the Statute of Frauds, we note that a court sitting in equity has a great deal of discretion to consider policy matters that may aid in achieving justice between the parties. See, e.g., Weissman v. Weissman, 384 Pa. 480, 482–86, 121 A.2d 100, 102–03 (1956).

that the chancellor's findings on this matter were relevant to the decision in this case.

At trial, appellants sought to establish that the lottery ticket purchased by Mr. Gravell was actually a group ticket. In making necessary credibility determinations on such key issues as whether there was a group, whether Gravell was in the group, and whether the winning ticket was actually a group ticket, the chancellor was completely justified in questioning whether the group's alleged rules were logical. This is especially true given that the instant case proceeded in equity where a court has wide discretionary authority to seek the truth and to do justice between the parties. *See Weissman v. Weissman*, 384 Pa. 480, 484–85, 121 A.2d 100, 102–03 (1956) ("Equity courts are not bound by strict common law rules. They possess broad powers and should exercise them so as to do substantial justice."). Therefore, we find no merit in the suggestion that the chancellor wrongly considered the illogical nature of the group's asserted rules.

On cross-appeal, appellees suggest that the chancellor erred in dismissing their counterclaim for damages from the delay in receiving the lottery proceeds caused by appellants' challenge. In rejecting the counterclaim, the chancellor found that while appellants failed to meet their burden of proving that the winning ticket was a group ticket, appellees similarly failed to meet their burden of proving that the ticket belonged solely to them. Given the power of an equity court to shape relief according to the equities of the case, and the record support for the trial court's conclusion that appellees failed to conclusively establish that the ticket belonged solely to Gravell, we will not disturb the trial court's denial of the counterclaim. *See, e.g., Easton Theatres v. Wells Fargo Land & Mortgage Co., Inc.*, 265 Pa.Super. 334, 352–53, 401 A.2d 1333, 1343 (1979) (holding that a chancellor has broad power to shape relief according to the equities of the case, so long as his decision is founded on competent support in the record), *appeal dismissed*, 498 Pa. 557, 449 A.2d 1372 (1982).

130 

Since neither party has succeeded in establishing an abuse of the chancellor's discretion or an error in law, we will not disturb the rulings below.

Affirmed.