## Parshall *versus* Jones *et al.*

1. Where a settlement right has been made the basis of one paper title, its efficacy as an inceptive title is exhausted, and it cannot support another paper title.

2. Part of a tract of land included in a settlement right was purposely thrown out in making the survey; this part was afterwards surveyed, August 9th 1844, as under the settlement right, but its acceptance was not procured, nor a patent issued until May 3d 1865: the title originated May 3d 1865. The survey of 1844 conferred no title.

3. A warrant was located by the lines of a previous survey, lost or not returned, which were run upon the ground and correctly returned as the lines of a subsequent survey. This is not a chamber survey.

4. The lines of the previous survey might be adopted and returned for the new survey as if the surveyor had traced them on the ground.

March 25th 1867. Before WOODWARD, C. J., THOMPSON and STRONG, JJ. AGNEW, J., at Nisi Prius. READ, J., absent.

Error to the Court of Common Pleas of *Warren county.*

This was an action of trespass q. c. f. brought by John Parshall against E. F. Jones and others, November 13th 1865.

The object of the suit was to try the title to 10 acres and 15 perches of land in Deerfield township, Warren county.

The land in dispute is the triangle marked A, shown on the annexed draft, less the small portion cut off by the southern end of the line B C. In 1830 John Parshall occupied what is called the old Parshall tract as an actual settler from 1825 to about 1836. An application for a warrant, based upon proof of this settlement, was made by Samuel Parshall, the father of John, October 5th 1839, for 303 acres and 29 perches. A witness testified:—

"I was along once when a survey of the Parshall tract or improvement was made. Old Mr. Parshall was alive and along; Samuel Parshall, Jr., was living with him; we came to the white-oak corner; a change was made, and a piece of land was thrown out and not included in the survey, between that and the river tracts. The old man refused to take it in—not worth paying the Commonwealth for it; this was called vacant land by them at the time."

A patent was issued to Samuel Parshall, February 4th 1840, for 303 acres and 28 perches and allowance, in pursuance of actual settlement and improvement. On the 9th of August 1844, A. H. Ludlow, deputy surveyor for Warren county, surveyed the triangle of 10 acres and 15 perches "for John Parshall, on his settlement and improvement,"—it was returned to the land office January 6th 1845.

E. F. Jones made an application, December 11th 1864, for a warrant for a piece of land situate in Deerfield township, Warren county, Pa., containing 80 acres, more or less, lying between the

[Parshall *v.* Jones.]

east and west branches of the Gordon run, bounded on the south by lands formerly owned by Robert Henry, on the west by lands ·of Wallace, on the north and east by lands unknown.   A warrant was issued accordingly December 15th, and the tract in his name surveyed January 28th 1865.   On this survey a patent was issued to Jones February 28th 1865.   John Parshall made application for a warrant of acceptance April 17th 1865 ; the warrant and patent were both issued to him May 3d 1865 for the triangle, in pursuance of the survey of August 9th 1844.

The Kortman tract was patented February 5th 1836 to Robert H. Henry.   The east branch of Gordon's run is also known as " Dennis's run."

Falconer, the deputy surveyor who made the survey for Jones in January 1865, testified :—

" I made no actual survey at the time.   I made the survey some time in May after.   There was an old survey entered on the county surveyor's books by Ludlow.   I took it and made my return from that.   It was made to Nathaniel Averill on warrant to John Ross, October 10th 1839.   When Jones brought his warrant to me, I told him the ground was covered by a survey.

" My survey on the Jones warrant was made actually May 17th 1865.   I covered the same ground of the previous survey returned to the land office.   I found the survey had been made as returned by Ludlow.   It covered the land in dispute.

" The south-east corner is a post (of the Jones survey).   The south-east corner of the 10 acres surveyed by Ludlow for John Parshall in 1844 is called a black-oak.   I could not find it.

" The south-west corner of my returned survey is a post, the south-west corner of the 10 acres is a white oak, and is 11 rods west of the corner of the Jones survey.

" The Allen warrant and survey were not known to me when the return was made on the Jones warrant.   I run on the Kortman tract line on the east and south of the Jones survey ; this line was marked on the ground.   Mary Campbell tract bounds it on the north, not well marked.   I took the corner, found some marks on it.   I found the line on the west side of the Allen survey. Made the line between the Allen and Jones survey, now there."

The plaintiff, amongst others, submitted the following points :—

3. If the jury believe from the evidence that the survey on said warrant made January 28th 1865, was not made on the ground, and that the corners designated as posts had no actual existence, and that it called for no adjoiners on the south that had any existence in fact, then the survey is presumed to be confined to the limits and boundaries described in the application.

4. The survey made by A. H. Ludlow, deputy surveyor, August 9th 1844, for plaintiff, and returned January 6th 1845, with warrant of acceptance and patent issued to him on said sur-

vey, May 3d 1865, vests in him a good title to the land included in said survey as against defendants.

5. The application, warrant, return of county surveyor thereon and patent to E. F. Jones, are not under the facts in evidence in legal conflict with the claim and title of plaintiff to the land described in the patent issued to him May 3d 1865.

7. If John Parshall resided with his family on the land called the old Samuel Parshall place for a period of five consecutive years, clearing and cultivating some ten or twelve acres in the mean time, and designating by acts and declarations the extent of his claim, and the land now in controversy was included within the claim so designated by him, his right thereto as a settler became fixed, and could not be destroyed by a sale subsequently to his brother Samuel, of the portion included within the survey made to Samuel on 11th September 1839.

To the 3d point the court (Johnson, P. J.) replied :—

, " The law would perhaps be as stated in the plaintiff's 3d point if the facts would warrant the submission of the question to the jury, as therein stated. · But we feel bound to say that it was competent for the county surveyor to make a chamber survey and attach to the Jones warrant, where he had before him a previous survey made by his predecessor in office and entered on the books of the office although never returned to the land office, of the identical same land called for in the warrant, when it was bounded on three sides by known and recognised lines or adjoiners, and where the south boundary called for could not be attained without including the land in dispute."

The judge also said :

" We therefore instruct you that the Jones warrant, being prior in date, followed by survey and patent, if it included the land in dispute, is the better title, and your verdict should be for the defendants."

The remaining points were negatived.

The verdict was for the defendants.

The plaintiff took a writ of error, and assigned for error the answers to his points and the above portion of the charge.

*L. D. Wetmore*, for plaintiff in error, cited Baker *v.* King, 6 Harris 138 ; Acts of April 3d 1792, § 3, Purd. 630, pl. 78 ; 3 Sm. Laws 71 ; March 1st 1811, § 2, Purd. 632, pl. 85 ; 5 Sm. Laws 199.

*W. D. Brown*, for defendants in error, cited Acts of April 3d 1833, § 1, Pamph. L. 129 ; April 3d 1792, § 9, 3 Sm. Laws 73, Purd. 632, pl. 86–7 ; McRhea *v.* Plumer, 1 Binn. 227 ; Covert *v.* Irvin, 3 S. & R. 288 ; Caul *v.* Spring, 2 Watts 390 ; Lanman *v.* Thomas, 4 Binn. 51 ; Boyles *v.* Kelly, 10 S. & R. 217 ; Adams

v. Jackson, 4 W. & S. 74; Lilly v. Pascall, 2 S. & R. 398; Emery v. Spencer, 11 Harris 275; Smith v. Beck, 1 Casey 106.

The opinion of the court was delivered, July 3d 1867, by

WOODWARD, C. J.—The plaintiff's attempt to connect his warrant and survey with the old Parshall settlement was well answered by the learned judge. Samuel Parshall's application of 5th August 1829 was founded upon and included that settlement, and when a presumptive right has been made the basis of one paper title, its efficiency, as an inceptive title, is exhausted, and it cannot support another paper title. The court concluded very properly that all the land not embraced in the Parshall survey was purposely thrown out and became vacant land, open to appropriation by warrant and survey. The land in dispute was part of that which was thus thrown out.

The present parties, therefore, were compelled to stand upon their respective paper titles. It would seem that John Parshall, imagining that he could found another warrant upon the same improvement which had been appropriated to the Samuel Parshall survey of 1829, procured a survey to be made for himself of 10 acres and 15 perches by A. H. Ludlow, deputy surveyor, on the 9th of August 1844, and returned it to the land office, but never procured its acceptance and a patent founded thereon until the 3d May 1865. It is scarcely necessary to pause here to remark that the court was right in treating this as a title originating on 3d May 1865. Deriving no advantage from the old improvement which had gone into the Samuel Parshall survey, this survey of 1844, though made by the deputy surveyor, was authorized by no warrant, and of course conferred no title. Under the Acts of Assembly and the practice of the land office, there were but two modes of acquiring title to public lands—one by settlement and improvement, the other by warrant and survey. And when either was adopted, due diligence in perfecting the right was always required. Having made his survey without precedent authority, the plaintiff should, within a reasonable time, have procured its acceptance by the officers of the land office, that the state and subsequent purchasers might have notice of his intention to appropriate the land. Lying by for so long a time, he exposed himself to intervening claimants, and one appeared.

E. F. Jones, under whom the defendants claim, obtained a warrant on the 15th December 1864 for 80 acres of land, more or less, lying between the east and west branches of the Gordon run, bounded on the south by lands formerly owned by Robert Henry, had a survey made of 77 acres 80 perches on the 28th January 1865, and got his patent on 28th February 1865.

The court instructed the jury that this was the oldest paper title, and the best " if it included the land in dispute ;" a qualifi-

[Parshall v. Jones.]

cation which substantially referred to the jury the question of location of the survey, and which shows how ill founded is the complaint that this question was withdrawn and .decided by the court.

The most material objection to the Jones survey is, that it was a chamber survey, and if it was merely that, time enough has not elapsed to give it the effect of an actual survey. The material facts bearing upon this part of the case appear to be that when Falconer, the deputy surveyor, received the Jones warrant, he found a survey entered upon the books of his office which his predecessor, Ludlow, had made for one Nathaniel Averill, upon a warrant in the name of John Ross, and without going upon the ground he took that survey and made his return from it. The Jones survey, as returned, called for Mary Campbell on the north, and for Robert Henry on the south and east, and it touched the branches of Gordon's run, one of which is now known as Dennis's run, and the Kortman warrant and survey of 1793, lying south and east of the Jones, known as the Robert Henry land.

John Ross, which was surveyed October 10th 1839, was a lost warrant, at least was never returned as a survey, though it seems to have been actually marked upon the ground. That Falconer laid down the lines of the Jones survey correctly from those which had been made for Averill upon the Ross warrant, was proved by his actual survey, made on the 17th of May 1865, when he says he covered the same ground of the previous survey.

The case then is that of a warrant located by the lines of a previous survey which were run upon the ground, and correctly returned as the lines of the Jones survey. It is not merely the location of a tract by adjoining surveys, but it was the adoption of the actual lines of a lost and unreturned survey. Can that be considered merely a chamber survey ? We think not. Although the lines of 1839 ought to have been re-marked, yet if they were the boundaries of older surveys they probably were not marked in 1839, and it would have been wrong to re-mark them in 1865. But they might be adopted and returned for the new survey with the same effect as if the survey had traced them upon the ground. In McRhea v. Plumer, 1 Binn. 227, it is decided that if a survey has been made under legal authority, and the land surveyed remains open to purchasers, a warrant coming afterwards to the hands of the deputy may be applied by him to the survey already made without running and marking the lines anew. And see Caul v. Spring, 2 Watts 390.

The Ross survey is understood to have been made by legal authority, and upon the principle of these cases it might therefore be adopted for the location of a younger warrant, the Ross itself being lost or abandoned.

But when in 1844 Ludlow surveyed the Ross warrant for

[Parshall v. Jones.]

Averill he cut off the triangular piece at the south-east corner of 10 acres and 15 perches " by consent," and surveyed it, as before stated, to John Parshall.   This is the land in dispute.

When Falconer returned the Jones warrant no notice was taken of the one line which cut off this triangle, and the land is contained in the parallelogram which constitutes the Jones survey. Now if Jones acquired title to any land he acquired title to all within his lines.   We have seen that at the date of his warrant Parshall had no office right, and the evidence failed to prove a settlement right.

This triangle, then, became part and parcel of the Jones survey.   The white-oak and black-oak corners, which belong to the elder surveys in the names of John Kortman and Samuel Parshall, though not called for by the Jones survey, must belong to it, because the Kortman survey is called for upon the south under the name of Robert Henry.   And if Jones runs south till he meets Kortman, the black-oak must be the point of intersection, and this fixes the white-oak as the necessary south-west corner.   In a word, the Jones survey as clearly covers the land in dispute as that which Ludlow made for Parshall in 1844, and the paper title of the defendants being the older, it was right to let it prevail.

It is believed that all the assignments of error have been sufficiently answered by these observations, and without more

The judgment is affirmed.