FRED E. YOUNG, INC., Appellant,

v.

BRUSH MOUNTAIN SPORTSMEN'S
ASSOCIATION.

Superior Court of Pennsylvania.

Argued Jan. 16, 1997.
Filed June 24, 1997.
Reargument Denied Sept. 4, 1997.

T. Dean Lower, Hollidaysburg, for appellant.

M. David Halpern, Altoona, for appellee.

Before FORD ELLIOTT, SCHILLER and BROSKY, JJ.

1. William Allen is also referred to as "William Allon." The former spelling will be utilized throughout this discussion.

2. The certified record also refers John Canan as "John Canon." We will use the former spelling in our discussion.

BROSKY, Judge.

This is an appeal from the final decree entered in this declaratory judgment action. Appellant presents the following issues for review: (1) whether the trial court erred in determining that appellee had title to the land; (2) whether appellant acquired the property by adverse possession; (3) whether the trial court erred in denying appellant's petition requesting that other landowners be notified of this action and permitted to intervene; (4) whether the trial court was bound by the factual findings and conclusions of law made by a different judge in a prior action involving the same parties; (5) whether the procedure followed by the trial court was arbitrary and prejudicial; and (6) whether the doctrine of estoppel by deed bars a finding for appellee. For the reasons set forth below, we affirm.

Before addressing these claims, it is necessary to recount the pertinent history of this case. During the late 1700's, the parties' predecessors in title, Ludwick Sells, William Allen and John Porter, began to settle the Pennsylvania wilderness in what is now Blair County.[1] Ludwick Sells was granted a warrant in 1786, but did not have his property surveyed until 1794. The Porter and Allen tracts were respectively warranted and surveyed in 1795 and 1796. However, both the Porter and Allen warrants noted that there were improvements on the land and that the owners' respective interests commenced as of 1792. Patents were later issued for the Porter, Allen and Sells tracts in 1800, 1808 and 1834, respectively.

The surveys of the Porter, Allen and Sells tracts were all performed by the same individual, John Canan.[2] The Sells survey identified William Allen and Michael Fetters as adjoining landowners. Neither the Porter nor Allen surveys referred to Sells as an adjoiner, however.[3] For reasons which are unclear, Sells did not settle on the land iden-

3. Porter's survey identified "the London land" as an adjoiner on the west and noted that Michael Fetters and John David's claim as adjoiners on the northern and southern sides, respectively. Allen's survey indicated that his land was adjoined by "the London land" on the west and John Porter on the south.

tified in his survey as adjoining that of Allen and Fetters. He instead located to the southwest on a tract adjoining John Porter's land.

Appellee, Brush Mountain Sportsmen's Association (Brush Mountain), acquired the land formerly owned by John Porter by two separate conveyances in 1948 and 1949. Appellant, Fred E. Young, Inc. (Fred Young) subsequently purchased the former Sells tract in 1965. After appellant bought the property, a dispute arose between the parties as to the ownership of approximately forty acres of land encompassed within the metes and bounds descriptions of both the Sells and Porter tracts. Consequently, appellant commenced a quiet title action against appellee in April of 1966.

The Honorable Samuel Jubelirer conducted hearings thereon in September, 1967, March 1968 and July, 1968. For reasons which do not appear of record, the case languished in the Court of Common Pleas until 1981.[4] On June 10, 1981, Judge O'Kicki issued an order denying appellant's quiet title action, but this order was not entered upon the docket until April 16, 1984. Appellant timely filed exceptions, as well as post-trial motions and supplemental post-trial motions to the trial court's order. Judge O'Kicki dismissed the exceptions in October of 1986, but a final judgment was never entered. No appeal was taken.

Appellant renewed its request for relief by filing the instant declaratory judgment action against appellee in February of 1991. Appellee filed preliminary objections asserting that the action was barred by reason of the doctrine of res judicata. Judge Jolene Grubb Kopriva agreed and dismissed appellant's complaint. Appellant timely appealed to this court. In an unpublished memorandum, we reversed and remanded for trial. *See Fred E. Young, Inc. v. Brush Mountain Sportsmen's Association*, 424 Pa.Super. 658, 617 A.2d 399 (1992) (No. 02000 Pittsburgh 1991). The Supreme Court declined to grant *allocatur. Id.*, 533 Pa. 611, 618 A.2d 401 (1992).

Upon remand of the case, appellant filed a motion for summary judgment as well as a petition for rule to show cause why certain other property owners should not be notified of this litigation and permitted to intervene therein. The trial court denied both motions. The Honorable Norman D. Callan, sitting as the sole trier of fact, conducted a three day trial on September 27 and 28, 1995 as well as on December 27, 1995.

Judge Callan filed an adjudication and decree *nisi* in February, 1996. Appellant timely filed post-trial motions which were ultimately dismissed. A final decree was thereafter entered upon the docket. Appellant timely appealed therefrom.

 When reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow. *O'Brien v. Nationwide Mutual Insurance Co.*, 455 Pa.Super. 568, 573, 689 A.2d 254, 257 (1997). Consequently, we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion, *Walker v. Ehlinger*, 544 Pa. 298, 300 n. 2, 676 A.2d 213, 214 n. 2 (1996).

> The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. Where the trial court's factual determinations are adequately supported by the evidence we may not substitute our judgment for that of the trial court.

*Clearfield Volunteer Fire Department v. BP Oil*, 412 Pa.Super. 29, 31–32, 602 A.2d 877, 879, *allocatur denied*, 531 Pa. 650, 613 A.2d 556 (1992) (citations omitted). We shall evaluate the decision of the trial court with these considerations in mind.

 Appellant contends that the trial court erred in concluding that appellee rather than appellant was the owner of the disputed land. In support of this claim, appellant relies upon the fact that his predecessor

---

4. During the interim, it appears that Judge Jubelirer was no longer on the bench. Consequently, Judge O'Kicki was specially assigned to the case.

in title, Sells, was the first to survey the land in question. Appellant thus asserts that it has superior title. Appellant's assessment is erroneous.

Contrary to appellant's belief, the Sells survey did not cover the disputed land. Sells' survey calls for the land as being adjoined by the London land as well as the property of William Allen and Michael Fetters.[5] *See* Plaintiff's Exhibit 5 (Survey of Ludwick Sells' Tract). Based on the description set forth in this survey, the Sells tract was situated northeast of the parcel in dispute here. *See* Plaintiff's Exhibit 2 (Connected Draft of 17 tracts of land, which depicts the location of the Sells, Porter, Allen and other tracts pertinent to this case). Porter's survey, however, specifically includes the contested land. *See* Defendant's Exhibit 15 (Survey of John Porter's Tract).

We recognize that the precise location of the Sells tract was a matter that was vigorously contested by the parties, with each supplying expert testimony as well as documentary evidence on this matter. It thus fell to the trial court to evaluate the conflicting evidence and testimony on this subject. The trial judge resolved this issue in favor of appellee by concluding that the Sells survey did not describe the land at issue here and, therefore, did not include the disputed tract. Having thoroughly examined the testimony of the witnesses and the other evidence presented at trial, we find that the trial judge's decision is amply supported by the record. Because appellee's predecessor, John Porter, had superior title and was the first to record a survey covering the disputed property, the trial court did not err in finding in favor of appellee. *See, e.g., Parshall v. Jones,* 55 Pa. 153, 159 (1867) (affirming judgment in favor of defendant, because he had older paper title and was the first to accurately survey the land in dispute).

■ Even were we to assume, purely for the sake of argument, that Sells' survey covered the disputed parcel appellant still would not be entitled to any relief. Although Sells' survey was completed before the Allen and Porter surveys and Sells seemingly has the older title, appellee nonetheless must prevail because Allen and Porter held their land by improvements which predated Sells' survey. To explicate why appellant's title is inferior to that of appellee, it is necessary to review the pertinent law.

All of the parties' predecessors in title acquired land directly from the Commonwealth pursuant to the statutes which were then in effect. *See* 64 P.S. § 1– § 616 (describing the allodial system in Pennsylvania devolving from the rights of former proprietaries). Pursuant to these acts, "there were but two modes of acquiring title to public lands—one by settlement and improvement, the other by warrant and survey. And when either is adopted, due diligence in perfecting the right was always required." *Parshall v. Jones,* 55 Pa. at 157. Where land was acquired by the former method, "the title of the settler relate[d] back to the time of entry, and the first stroke of the axe," provided that he followed up his inceptive title with that degree of due diligence which the law requires of settlers, *i.e.,* applying for a warrant and returning a survey on the land. *Emery v. Spencer,* 23 Pa. 271, 277, 278 (1854). If land was acquired pursuant to the second method, "a precisely descriptive warrant g[ave] title from its date, and a vague one from the time of survey...." *Id.,* 23 Pa. at 275.

Regardless of whether the warrant is descriptive or vague, the warrant imposes on the holder the duty of having it surveyed and returned to the Surveyor–General's Office in a reasonable time. *Id.* When a survey is not returned or no survey is made within seven years of the time the interest in land commences, the warrantee is presumed to have abandoned his claim. *Id.* In such a case, the original warrantee may lose out to a subsequent claimant who applies for the land and perfects his title. *Id.,* 23 Pa. at 275–277. Application of these principles persuades us that the trial court did not err in finding that appellee had better title to the land.

---

5. Fetters' name is also spelled as "Fetter." We will use the former spelling for purposes of clarity and consistency.

The record reflects that Ludwick Sells was issued a warrant on March 14, 1786. *See* Plaintiff's Exhibit 4–A (Ludwick Sells' warrant). The warrant does not specify the location of the land. It is instead drafted in vague language which provides:

> WHEREAS, Ludwick Sells ... hath requested to take up One hundred Acres of Land, on the waters of little Juniata about three miles below Gullaphers on the old Trading path that passes said Gullaphers adjoining James Igoes Claim between the London Land and Bald Eagle Ridge in Frankston Township in the County of Bedford.

*Id.* In addition, the warrant makes no mention of improvements upon the land and provides that Sells' interest was to commence from the date of the warrant, *i.e.*, March 14, 1786. *Id.* Sells' land was surveyed on October 24, 1794. Plaintiff's Exhibit 5 (Survey of Ludwick Sells' Tract).

By contrast, the warrants to both Porter and Allen are more specific as to the location of the land and indicate that the tracts were held by improvements. Each warrant is set forth *seriatim.*

> WHEREAS William Allen ... hath requested to take up Four hundred acres of land Including improvement bounded by the London Land on the East and the Brushe [sic] Ridge on the Southwest including two small Runs which empties [sic] into the Little Juniata River in Bald Eagle ... Allegheny Township in the county of Huntingdon.... Interest to commence from the first of June 1792....

Defendant's Exhibit 2 (William Allen's warrant).

> WHEREAS John Porter ... hath requested to take up Four hundred acres of land Including an improv't in Bald Eagle Creek Valley adjoining land of John Deavson's on the South West and the Lond Comp. land on the North in Allegany Towp. in the county of Huntingdon.... Interest to commence from the first of September 1792....

Defendant's Exhibit 27 (John Porter's warrant).[6]

If Sells' warrant is construed to be vague, his title would only date from the day of his survey, *i.e.*, 1794. *Emery v. Spencer, supra.* Allen's and Porter's interests, however, date from the time their interests commenced in 1792 as their warrants are not only more specific in description, but more importantly, provide that they held their land by improvements thereon. *See* Allen Warrant and Porter Warrant, *supra.* Tax records further evidence settlement, at least as to Allen. *See* Defendant's Exhibit 3 (copy of excerpt from History of Blair County at page 101 which reveals that William Allen was listed as a resident taxpayer of the county as early as 1788, and that he owned taxable herds of horses and cattle). Consequently, Allen and Porter's title would be superior to that of appellant in the event the Sells' warrant is construed to be vague. *Emery v. Spencer, supra.*

Our conclusion would remain the same even if Sells' warrant is deemed to be specific. After obtaining his warrant in March of 1786, Sells waited until October of 1794, more than eight and one-half years later, before taking any action to perfect his interest by having the land surveyed and a return made thereon. Accordingly, a presumption of abandonment arises. *Emery v. Spencer, supra.* Nothing was proffered to rebut the presumption, such as evidence of Sells' possession of the land or erecting improvements thereon. *See id.*, 23 Pa. at 277 (possession of the land and improvements made constitute the only exception to the general principle that abandonment will be presumed after seven years' delay to return a survey). Under these circumstances, Sells must be deemed to have abandoned his claim by allowing more than seven years to elapse after procuring his warrant. *See id.*, 23 Pa. at 275 (the court can conclude, as a matter of law, that a warrantee has abandoned a claim after a lapse of seven years when there is no proof of circumstances to rebut the presumption).

**6.** The individual identified in Porter's warrant as John Deavson appears to be the same person identified on Porter's survey as John David.

As previously discussed, Allen and Porter were in possession of their respective property and they held their land by improvements commencing in 1792, more than two years before the survey of Sells' land. Because their titles date to the time of their entry upon the land, their titles are paramount to that of Sells. *See id.,* 23 Pa. at 278 (occupant who settled on the land before it was surveyed by warrant holder had superior title; warrant holder was deemed to have abandoned his claim by allowing nearly fourteen years to elapse before surveying the property.).

In its second allegation of error, appellant contends that it acquired title to the property by adverse possession. Appellant does not support his argument with citation to any pertinent legal authority in contravention of Pa.R.A.P., Rule 2119, 42 Pa. C.S.A. When the appellant has failed to cite any authority in support of a contention, the claim is waived. *Bunt v. Pension Mortgage Associates, Inc.,* 446 Pa.Super. 359, 368, 666 A.2d 1091, 1095 (1995). However, appellant would not be entitled to any relief even if we were to consider this issue.

It is well settled that a party claiming title to real property by adverse possession must affirmatively prove that he or she had actual, continuous, distinct, and hostile possession of the land for twenty-one years. Each of these elements must exist, otherwise the possession will not confer title. An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his act. . . . He must keep his flag flying and present a hostile front to all adverse pretensions. Broadly speaking, actual possession of land is dominion over the land; it is not equivalent to occupancy. There is no fixed rule, however, by which the actual possession of real property by an adverse claimant may be determined in all cases. The determination of what constitutes actual possession of property for purposes of adverse possession depends on the facts of each case, and to a large extent[,] on the character of the premises.

The words visible and notorious possession . . . mean that the claim of ownership must b[e] evidenced by conduct sufficient to place a reasonable person on notice that his or land is being held by the claimant as his own. To constitute distinct and exclusive possession . . . it need only be a type of possession which would characterize an owner's use. For example, . . . maintain[ing][a] lot by cutting the lawn and by planting . . . thereon various shrubbery and flowering plants [will suffice].

\*　\*　\*　\*　\*　\*

Finally, in order for adverse possession to ripen into title, it is necessary to show that such possession has been continuous and uninterrupted for the full statutory period. In this Commonwealth, . . . the statutory period is twenty-one years. The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day.

*Glenn v. Shuey,* 407 Pa.Super. 213, 221–223, 224, 595 A.2d 606, 610–611, 612 (1991) (citations and quotation marks omitted).

Appellant purchased its land in 1965. Ownership of the disputed land has been the subject of litigation between the parties since 1966. Appellant accordingly must tack its predecessor's period of adverse possession for adverse possession to exist. In order for possession to be tacked, there must be privity between the successive occupants of the property. *Id.,* 407 Pa.Super. at 225, 595 A.2d at 612.

Privity refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law. But a deed does not itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, although the grantee enters into possession of the land and uses it in connection with that conveyed. . . .

*Id.,* 407 Pa.Super. at 225, 595 A.2d at 612–613 (citations and quotation marks omitted). As cogently explained in a recent decision by this court:

Acceptance of a deed describing boundary lines confines the premises conveyed to the area within the boundaries, and such a

deed does not convey inchoate rights acquired by incompleted adverse possession. Each predecessor must have claimed title to the property in dispute, and in purported to include it.

*Moore v. Duran,* 455 Pa.Super. 124, 139, 687 A.2d 822, 829 (1996) (citations and quotation marks omitted). *Accord Glenn v. Shuey, supra.*

The record reflects that appellant's predecessors in title were the Delancey heirs. The Delancey family first acquired the Sell tract in 1855. Since that time, members of the Delancey family have transferred the property amongst themselves. With the exception of a five acre parcel located at the southern end of the property which had been previously conveyed, all of the remaining acreage was retained by the Delanceys and was ultimately conveyed to appellant. Privity therefore exists between appellant and its immediate grantors. *Moore v. Duran* and *Glenn v. Shuey, supra.*

The question remains as to whether the Delanceys adversely possessed the disputed portion of the property. Appellant asserts that such possession existed because the Delanceys farmed the land and fenced it in. Contrary to appellant's assessment, there was absolutely no evidence demonstrating that the disputed portion of the land was actually enclosed or cultivated by the Delanceys for a continuous period of twenty-one years.

There was evidence that the Delanceys farmed and dwelt upon the undisputed or southern portion of the former Sells tract which contains approximately sixty acres. *See, e.g.,* N.T. 9/28/95 at 69 (indicating that the farmhouse and buildings were on the non-disputed portion of the property and that the non-disputed part of the land was farmed); Plaintiff's Exhibit 25 and 26 (photographs depicting the Delancey's abandoned farmhouse and barn) and Exhibit 32, at 208 (Testimony of Max Kneidinger, indicating that his family farmed the fields located at the southeastern part of the Delancey farm). However, the activities of the Delancey family on the southern part of the land is irrelevant because appellant's title to and right to possess this portion of the property is uncon-

tested. We will therefore focus solely upon the activities relating to the remainder of the tract which are in dispute.

With regard to this issue, we note that there was some evidence that the Kneidinger family leased and farmed the disputed part of the Delancey tract from approximately 1940 until appellee purchased the property and began cultivating it. *See* Plaintiff's Exhibit 32, at 207–208 and 211. However, the record reflects that the disputed parcel was also included as part of the tract of land owned by the Baker family. *See* Plaintiff's Exhibit 31 (deed conveying the former Allen and Porter tracts to Elias Baker). The property remained in the Baker family until 1936, when it was bought by the county as a result of a tax sale. *See* Exhibit 14A (commissioners's deed and deed poll). Appellee's grantors, Paul Walker and other individuals bought the land in 1946 from the county trustee. *See id.* (deed from trustee to appellee's grantors).

Appellee acquired the land in 1948 and 1949 from Walker and the other grantors. *See* Defendant's Exhibit 14, at paragraph 2 (Abstract of Title) and Exhibit 14A (deeds from appellee's grantors to appellee). Appellee began cultivating the land in 1950. N.T. 9/28/95 at 121–123; Defendant's Exhibit 13B (minutes of Brush Mountain's meeting held on January 15, 1950, indicating that Brush Mountain had entered into a contract with the state game commission regarding cultivation of food plots in the disputed area). Appellee's members also strung wire fencing in the area at approximately the same time. N.T. 9/28/95 at 123; Defendant's Exhibit 13A (minutes of Brush Mountain's meeting held in 1949, indicating that their property was to be inclosed with wire). Appellee thereafter continued to plant and maintain the area for use in its activities. *See, e.g.,* N.T. 9/28/95 at 74–77, 79–81, 85–86; Defendant's Exhibits 11 and 12 (Brush Mountain's contracts with the state game commission regarding cultivation of food plots, respectively dated May 13, 1961 and August 2, 1976).

The events which transpired prior to the county's acquisition of the property in 1936 are irrelevant. If the Delanceys had acquired title to the property by adverse pos-

session or otherwise before 1936, it was incumbent upon them to challenge the tax sale or redeem the land. It does not appear that the land was redeemed or that the validity of the sale was otherwise questioned within the pertinent statutory period. Accordingly, the sale was valid. 72 P.S. § 5971q, *repealed in part by* 72 P.S. § 5860.801. The effect of the sale was to discharge all prior liens or claims against the land, 72 P.S. § 5971i, *repealed in part by* 72 P.S. § 5860.801, and vest fee simple title to the property in appellee's grantor. *Id.,* 72 P.S. § 5971n, *repealed in part by* 72 P.S. § 5860.801.[7] The tax sale thus invalidated any claim which the Delanceys might have had to the property prior to 1936 by adverse possession or otherwise.

■ Adverse possession does not lie against land held by the county in connection with a tax sale. *Torch v. Constantino,* 227 Pa.Super. 427, 433, 323 A.2d 278, 281 (1974). Appellant therefore cannot rely upon the activities of the Delanceys or their lessees during the period in which it was owned by the county, *i.e.,* from 1936 to 1946, to establish adverse possession. With regard to the post-tax sale conduct of the Delancey family or their lessees, the record discloses that their activities upon the disputed part of the land were not continued for a period of twenty-one years. Because it is plain that appellant and/or its predecessors have not demonstrated continuous and uninterrupted possession of the land for a period of twenty-one years following the tax sale, appellant's adverse possession claim must fail.

■ Appellant next contends that the trial court erred in denying his petition seeking permission to notify neighboring landowners of the suit so that they could intervene. Appellant again fails to support its position with citation to any pertinent legal authority in contravention of Pa.R.A.P., Rule 2119, 42 Pa.C.S.A. Accordingly, this issue has been waived. *Bunt v. Pension Mortgage Associates, Inc., supra.* In any event, this claim is wholly meritless.

The instant action only involves title to the northern portion of the former Sell tract, containing approximately forty acres. Title to the remaining acreage is not in dispute. Title of the part of the land encompassed within the former Allen tract is likewise uncontested. None of the persons cited by appellant in its brief has any connection with the forty acres that form the subject of this litigation. Rather, these individuals or entities all own property which falls within either the undisputed portion of the Sell tract or the Allen tract. The parties referenced by appellant therefore have no legally enforceable interest which is affected by the trial court's disposition of this case. Under these circumstances, there is no basis on which these individuals could intervene. *See* Pa. R.C.P., Rule 2326, 42 Pa.C.S.A. (enumerating the instances in which a person who is not a party to an action shall be permitted to intervene therein).

Appellant has nonetheless attempted to create an issue by asserting that it may have some claim to a portion of William Allen's land and by casting doubt upon the title to the sixty acres of the Sells tract which are not in dispute. Appellant's arguments are ludicrous. More than 200 years have passed since John Canan surveyed these tracts. The time for challenging the accuracy of the surveys and establishing a claim to the land expired long ago. As a result, any claim to Allen's land has been abandoned by Sells and his successors. With regard to the uncontested part of the Sells tract, it is evident that Sells or his successors acquired title to the land by adverse possession. Therefore, no cloud upon the title of either Allen's or Sells' successors could exist. Viewed in this manner, there is clearly no reason to involve the owners of the undisputed lands in the instant litigation.

■ Appellant's fourth assertion of error implicates Judge Callan's reference to certain factual findings made by Judge O'Kicki during the previous adjudication of appellant's quiet title action. Appellant con-

---

7. The repeal only applies to taxing districts operating under the Real Estate Tax Sale Law, 72 P.S. § 5860.101— § 5860.803. This law did not go into effect until January 1, 1948. 72 P.S. § 5860.803. Accordingly, the tax sale in this case was not subject to the Real Estate Tax Sale Law.

tends that Judge Callan's references violated this court's prior decision regarding application of res judicata. Notwithstanding appellant's belief to the contrary, Judge Callan applied neither the doctrine of res judicata nor collateral estoppel. It instead appears that Judge Callan believed that he was bound by Judge O'Kicki's factual findings under the coordinate jurisdiction rule. *See* N.T. 9/28/95 at 238 and 241. Pursuant to this doctrine, "judges of coordinate jurisdictions sitting in the same court and in the same case should not overrule the decisions of each other." *Okkerse v. Howe,* 521 Pa. 509, 516, 556 A.2d 827, 831 (1989).

 As applied here, Judge Callan's application of the coordinate jurisdiction rule was improper because the instant declaratory judgment action did not, as previously determined by this court, constitute the same case as appellant's quiet title action. Consequently, the trial court was not bound by Judge O'Kicki's factual findings. Despite the trial court's misconception regarding to the applicability of the coordinate jurisdiction rule, the error was harmless.

The trial court made two specific references to the alleged factual findings made by the prior judge in the quiet title action. *See* Adjudication and Decree Nisi, filed 2/22/96, at paragraphs 45 and 46. These findings related to appellant's inability to prove its right to relief based on either its superior record title or adverse possession. *Id.* Judge Callan further found that the evidence presented by appellant did not justify a departure from the Judge O'Kicki's findings. *Id.* at paragraph 50.

As previously discussed, appellant has failed to prove either that it has superior record title to the land or that it has acquired title by adverse possession. It is thus clear that the trial judge's findings and conclusions were correct, even if premised on the mistaken application of the coordinate jurisdiction rule. Because the trial court's error had no effect upon the outcome of this case, the error must be deemed harmless. *See, e.g., Snyder v. Gravell,* 446 Pa.Super. 124, 128, 666 A.2d 341, 343 (1995), *allocatur denied,* 544 Pa. 676, 678 A.2d 366 (1996) (error which

had no impact on the decision of the case was harmless).

Appellant's penultimate challenge relates to the trial court's alleged denial of oral argument and refusal to allow appellant to file a reply brief. These issues were not raised in appellant's post-trial motions and are therefore waived. *See* Pa.R.C.P., Rule 227.1(b), 42 Pa.C.S.A. (grounds not specified in post-trial motions are deemed waived) and Pa.R.A.P., Rule 302(a), 42 Pa.C.S.A. (issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Even were we to consider these issues, no relief would be due.

 Appellant cites Pa.R.C.P., Rule 211, 42 Pa.C.S.A. in support of his right to engage in oral argument. However, this rule only governs oral argument of motions. Appellant is not complaining of the abridgement of its right to orally argue a motion. Rather, appellant believes that it had a right to engage in oral argument in support of its position following trial upon the filing of its memorandum of law and proposed findings of fact. *See* Appellant's Brief at 42–43.

There is no authority which grants a party the right to oral argument after trial. Nor has appellant referred us to any authority which so requires. The fundamental purpose of a trial is to allow the parties to present evidence in support of their respective positions. As part of the trial process, parties are accorded the right to engage in closing argument. *See* Pa.R.C.P., Rule 1516 (the parties shall be prepared to argue the case immediately after the close of the evidence) and Rule 1601(a) (practice and procedure in a declaratory judgment action shall follow, as nearly as may be, the rules governing the action in equity), 42 Pa.C.S.A. Appellant was accorded this right here but declined to make a closing argument. N.T. 12/27/95 at 139. Having failed to avail itself of the rights provided in the rules, appellant will not now be heard to complain.

In any event, oral argument would not have been of material benefit. The issues to be decided were not unduly complex. Each party asserted title to the land. In addition, appellant suggested that if record title was lacking, it had acquired title by adverse pos-

session. The trial court had before it ample evidence on which to resolve these questions, which included the exhibits and testimony introduced at trial as well as the parties' briefs. Under these circumstances, we are unable to comprehend the manner in which oral argument would have enhanced the evidence before the court or altered the court's understanding thereof so as to have persuaded the court to render a decision in appellant's favor. *See Gerace v. Holmes Protection of Philadelphia*, 357 Pa.Super. 467, 475, 516 A.2d 354, 359 (1986), *allocatur denied*, 515 Pa. 580, 527 A.2d 541 (1987) (plaintiff was not prejudiced by the denial of oral argument since the record presented to the trial court was extensive and oral argument would not have in any way enhanced or altered the materials presented to the court).

■ A similar conclusion is reached in connection with the denial of appellant's request to file a reply brief. Appellant references Pa.R.A.P., Rule 2185(a), 42 Pa.C.S.A. in support of his position. However, Rule 2185 is a rule of appellate procedure which only applies to the filing of reply briefs in the appellate courts. It has no applicability whatsoever to briefing requirements in the courts of common pleas.

Briefing requirements are covered, if at all, either by the Pennsylvania Rules of Civil Procedure or the local rules of court.[8] Although Pa.R.C.P., Rule 210, 42 Pa.C.S.A. addresses the issue of briefs, the rule is silent on the subject of reply briefs, and merely requires that briefs be endorsed with the name of the case, the court, term and number and name and address of the attorney. Rule 1516, *supra*, is similarly unavailing as it prohibits the parties from filing findings of fact and conclusions of law except by leave of court. The rule thus makes it clear that the filing of trial memoranda is a matter to be exclusively decided by the trial judge.

The trial court was in the best position to determine the necessity and scope of the parties' briefs. In this case, the trial judge explicitly requested proposed findings of fact, conclusions of law and a discussion of the

pertinent caselaw from the parties as to their respective positions and other additional issues. N.T. 12/27/97 at 136–139. The judge further stated that there were to be no supplemental briefs and that the parties would not be permitted to reargue or raise additional matters not covered by their briefs. *Id.* at 136–137 and 138. Appellant's counsel indicated that he understood this directive. *Id.* at 139.

Appellant has not explained how a reply brief would have been of material benefit, aside from vague allusions to the correction of alleged errors in appellee's brief. If errors were indeed made by appellee and adopted by the trial court, appellant had the opportunity to rectify them in his post-trial motions. Moreover, appellant had the opportunity to discuss the evidence and applicable law in his own brief, thereby negating any possible misapprehension of the facts or law supplied by appellees.

The trial court accorded both parties equal opportunity to fully articulate their respective positions. Given the issues involved, there was no compelling reason or need for the filing of supplementary materials by the parties. Hence, no relief is due on this ground.

■ Appellant finally asserts that appellee is estopped from asserting title pursuant to the language contained in one of its predecessor's deeds. While appellant's recitation of the law on this point may be accurate, it ignores the effect of the tax sale. As previously discussed, the disputed land was a part of the property acquired by the county following the tax sale. The sale was valid because the property was neither redeemed nor otherwise challenged. The effect of the tax sale was to discharge any prior liens or claims and convey fee simple title to the purchaser, *i.e.*, appellee's predecessors in title, who subsequently conveyed the land to appellee. Under these circumstances, appellee is not estopped from asserting title to the property. Finding no error or abuse of dis-

---

8. Appellant has not referenced the applicable Blair County rules, if any. As appellant's claim is not based on a violation of the Blair County procedural rules, this issue is not properly before this court and will not be further discussed.

cretion necessitating the grant of any relief, we affirm.

Decree affirmed.